IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA

-vs-                                                                                          CAUSE NO.  A-09-CR-453-SS

JESSE JOE GUTIERREZ

_____

**O R D E R**

BE IT REMEMBERED on the 12th day of January 2011, the Court called the above styled and numbered cause for a hearing pursuant to 18 U.S.C. § 4241 and 18 U.S.C. § 4247(d) to determine if the Defendant Jesse Joe Gutierrez should be involuntarily treated with antipsychotic medication in order to restore his competency to proceed to trial.  The Defendant appeared in person and through counsel.  Prior to the hearing, the Defendant and his counsel, as well as counsel for the United States of America, reviewed the competency restoration study report/psychological evaluation ("Report") dated July 28, 2010, made at the United States Department of Justice, Federal Bureau of Prisons, Federal Medical Center in Butner, North Carolina, said Report being filed under seal in this cause.

The United States of America presented testimony by telephone from Dr. Kwanna Williamson, M.D., one of Defendant's treating physicians.  Defendant opposed the government's request for a hearing and opposed any attempt to medicate him involuntarily.  Defendant argued the government had failed to exhaust the Bureau of Prison's administrative procedures and argued that involuntary medication was inappropriate in light of the four factors established by *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  After considering the report, testimony, the arguments and

representations of counsel, the relevant law, and the case file as a whole, the Court enters the following opinion and orders.

## Background

Between November 12, 2008 and December 1, 2008, Defendant made over 100 phone calls to KVUE, a television station in Austin, Texas. In these calls he made specific threats to harm or kill former President George W. Bush, his wife Laura Bush, Texas Governor Rick Perry, and his wife Anita Perry. Defendant was arrested by Austin police on December 1, 2008 and interviewed by Nguyen Vu of the Secret Service and reiterated those threats. After being released from the Austin State Hospital, on August 27, 2009, he allegedly left a message on the Secret Service voice mail system threatening Mr. Vu, President Obama, Former Presidents George H.W. Bush and George W. Bush, Governor Perry, all law enforcement, and all lawyers. He was arrested the next day and subsequently indicted for violations of 18 U.S.C. § 871 and § 879 for threatening to kill President Barack Obama and former Presidents George H.W. Bush and George W. Bush.

The Defendant has been principally diagnosed with schizophrenia, undifferentiated type. On February 1, 2010, the undersigned found the Defendant incompetent to stand trial and ordered him committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4241 for treatment in a suitable facility and in order to determine whether there was a substantial probability that in the foreseeable future the Defendant would attain the capacity to stand trial. Defendant has steadfastly refused to take any medication. On July 12, 2010, Defendant was tested to determine his mental competence. Following the finding that he lacked a factual understanding of the court process and legal concepts, the Bureau of Prisons conducted a due process hearing on July 21, 2010, under the guidelines of *Washington v. Harper*, 494 U.S. 210 (1990) as the initial step

prior to requesting involuntary treatment. The United States Department of Justice submitted the Report on July 28, 2010. The Report recommended Defendant be involuntarily treated with psychotropic medication and asking the Court to make a judicial decision under *Sell v. United States*, 539 U.S. 166, 179 (2003), regarding the proposed course of treatment.

**Analysis**

There are generally two major reasons to allow forced medication of an individual. The first, is where forced medication is warranted because an individual is dangerous or his refusal to take medication puts his health gravely at risk. *See Harper*, 494 U.S. at 225-26. This is generally an "objective and manageable" inquiry. *See Riggins v. Nevada*, 504 U.S. 127, 140 (1992) (Kennedy, J., concurring in judgment). Thus, there will regularly be a hearing at the medical center under *Harper* before turning to a *Sell* inquiry.

The second reason is to render a defendant competent to stand trial. *Sell* recognizes that under appropriate circumstances, "the Constitution permits the Government involuntarily to administer anti-psychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial." *Sell* 539 U.S. at 179. Courts must consider four factors when making such a determination: "(1) whether important governmental interests are at stake; (2) whether involuntary medication will significantly further those interests; (3) whether involuntary medication is necessary to further those interests; and (4) whether the administration of the drugs is medically appropriate." *United States v. Palmer*, 507 F.3d 300, 303 (5th Cir. 2007); *Sell*, 539 U.S. at 180-81. The Government must show a sufficiently important need for the treatment to "overcome the individual's protected interest in refusing it." *Sell*, 539 U.S. at 183.

As an initial matter, Defendant argues the Government has failed to follow proper administrative procedures. This argument is founded in the regulatory requirement that the Bureau of Prisons obtain a determination from a psychiatrist "who is not currently involved in the diagnosis or treatment of the inmate" on the question of whether involuntary treatment is necessary. *See* 28 C.F.R. § 549.43(a)(3), (5). Defendant argues that since Dr. Williamson and Dr. Pyant were Defendant's treating physicians and they evaluated the *Sell* factors, this regulation has not been met. This is simply incorrect.

The staff at the federal medical center held a *Harper* hearing to determine if involuntary medication was appropriate. The case was heard by Dr. Ralph Newman, a psychiatrist unconnected to the treatment of the Defendant, and he found that involuntary medication was not approved under *Harper* due to the fact that the Defendant did not appear to be a danger to himself or others. The staff then referred the case back to the District Court for a determination pursuant to *Sell*. Thus, the regulation was met. To be sure, the treating psychiatrists offered their opinions in the Report regarding the *Sell* factors, but this is not a violation of the regulation.

Further, Dr. Williamson testified in the hearing. Not only did she testify regarding *Sell*, but she testified that Dr. Newman reviewed the *Sell* analysis and agreed that Defendant was not competent for trial and would not be competent unless he received medication. In fact no one, not even Defendant's counsel, argues that Defendant is, or is likely to become, competent to stand trial without medication. Thus, the Court must make a decision under *Sell* and has heard testimony and evidence on those factors. In short, administrative procedure has been followed and the Court has all the information necessary to render a decision under *Sell*.

I.      **Important Government Interests**

Two equally important government interests weigh heavily in favor of involuntary treatment. First, "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." *Id*. at 180.  Gutierrez has been indicted for threats made against the President, former Presidents, their families, and federal law enforcement.  He also has threatened Texas state officials, judges, and lawyers, although these are not charged in the indictment.  These are not minor allegations and they show the importance of the government interest in trying the Defendant for the crimes he may have committed.

Secondly, the Government has an interest in avoiding the alternatives to forced medication and trial.  Only one alternative exists if the Defendant does not become competent and cannot be prosecuted: he will spend the rest of his life in a hospital.  At the hearing, the Defendant admitted that the Government has an important interest in bringing him to trial.[1]  As a result, the Court finds that important governmental interests are at stake in this case.

II.     **Involuntary Medication will Significantly Further the Governmental Interests**

To satisfy the second factor of the analysis, the Court must find that treatment "is substantially likely to render the defendant competent to stand trial." *Sell*, 539 U.S. at 181.  As part of this analysis, the Court must determine whether the medication will produce "side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense."

---

[1] Defense counsel stated, however, that Defendant would rather remain hospitalized indefinitely than take medication.  Thus, he essentially argued it was likely Defendant would succeed in his insanity defense and therefore the Court should simply commit the Defendant and avoid medicating him against his will.  While the end result of Defendant's hospitalization may prove to be the same, this argument fails to account for both the Government's interest in trial and the fact that Defendant is not competent to make determinations about his own medical care—indeed he believes he is not ill.

*Id*.  The Report and testimony indicate the proposed treatment is substantially likely to render the Defendant competent to stand trial.

According to the Report, Gutierrez "displays grandiose and paranoid delusions and his communication is characterized by disorganized speech. . . . [H]e intensely believes he is being conspired against and assumes he is 'King Blessed, King of Kings' [and] he indicates waiting on word from 'God' to engage in aggressive behavior toward others."  Report at 1.  Further, "Mr. Gutierrez has previously been restored to competency after treatment with antipsychotic medication" in 1999.  *Id.* at 11.  Further, Dr. Williamson testified that there is no medical reason to believe that he will respond any differently to antipsychotic medication now.  Aside from slight weight gain, Defendant is in similar physical condition as during his treatment in 1999.  Finally, Dr. Williamson testified that there is "zero chance" of Gutierrez regaining competency without medication due to the complexity of his delusional system—he believes, among other things, there are microchips in his body—and his inability to comprehend his own illness.  The Report also concludes the treatment "is substantially unlikely to have side effects that will interfere significantly with Mr. Gutierrez' ability to assist counsel in conducting a trial defense."  Report at 12.

The Court thus finds that involuntary medication is substantially likely to render the defendant competent to stand trial and will significantly further the governmental interests.  The Department of Justice's conclusion that antipsychotic medication is substantially likely to render the Defendant competent is based on his specific illness, his mental health history, and his prior positive response to similar treatment.

### III. Involuntary Medication is Necessary to Further the Governmental Interests

The Court must determine whether "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell*, 539 U.S. at 181. The Defendant did not present any alternative treatments or argue that less intrusive treatments would achieve the same results. Presently, Defendant has been committed by court order since September 18, 2009, without showing signs of improvement. Additionally, according to the Report, since Defendant does not recognize himself as mentally ill, he is "currently unable to engage in any form of psychotherapy or psychosocial intervention due to disorganized thinking, disorganized/bizarre behavior, and hallucinations." Report at 13. Further, Dr. Williamson testified that antipsychotic medication is the primary treatment for schizophrenia. The effectiveness of such medication in "treating schizophrenia and related psychotic disorders has been repeatedly demonstrated in published professional literature since the 1960s" and is considered "essential" to treating these conditions. *Id.* Finally, as discussed above, Dr. Williamson testified there is "zero chance" of Gutierrez regaining competency without medication. The Court thus finds that any alternative, less intrusive treatments are unlikely to achieve substantially the same results and involuntary medication is necessary to further the Government's interests.

### IV. Administration of Antipsychotic Drugs is Medically Appropriate

Finally, the Court must determine whether "administration of the drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181 (emphasis in original). As noted above, treatment with antipsychotic medications is the "primary treatment" for anyone diagnosed with the Defendant's condition. Report at 13. Further, Defendant has responded positively to such medication in the past and Dr. Williamson testified he

has had no physical changes which would suggest he would respond any differently now. The Court also notes that without proper treatment, the only possible future for Defendant is in a hospital. As Dr. Williamson testified, any possibility of him regaining competence and returning to society is dependent on medication. Therefore, the court finds the involuntary administration of the drugs to be medically appropriate and in the patient's best medical interest in light of his condition.

## Conclusion

The Court does not take lightly the decision to medicate an individual against his will with powerful antipsychotic drugs. However, in this case, Defendant is unable to comprehend his own mental illness. The basis for Defendant's refusal to take medication is his complex delusional system wherein he believes he has microchips implanted in his body, he is King Blessed, King of Kings, the legal system is conspiring against him, and God will remedy all wrongs against him. This is one of those rare circumstances when involuntary medication is necessary in order to further important governmental interests and the Government has shown the treatment is substantially likely to further those interests, the side effects are unlikely to undermine the fairness of the trial, no alternative treatments are likely to achieve the same result, and the treatment is medically appropriate. Thus,

>   IT IS ORDERED that the Defendant Jesse Joe Gutierrez remain committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4241.
>
>   IT IS FURTHER ORDERED that Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, the Court finds that the ends of justice served by hospitalizing the Defendant outweighs the best interest of the public and the Defendant in a Speedy Trial and, thus, the Court finds that between the United States' Motion for Psychiatric Exam filed September 8,

2009, until the time that the Defendant's mental condition is so improved that trial may proceed is excludable under the Speedy Trial Act, 18 U.S.C. § 3161(h).

    IT IS FINALLY ORDERED that the Attorney General of the United States shall involuntarily medicate the Defendant as is medically appropriate for a patient with his condition and in accordance with the United States Department of Justice's July 28, 2010, competency restoration report in order to render the Defendant competent to stand trial.

SIGNED this the 3rd day of February 2011.

                                                SAM SPARKS
                                                UNITED STATES DISTRICT JUDGE